# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

GREG GIBBONS,                      )
                                   )
              Plaintiff,           )        Case No.: 2:15-cv-2231-GMN-CWH
       vs.                         )
                                   )        **ORDER**
UNION PACIFIC RAILROAD COMPANY,    )
                                   )
              Defendant.           )
_____  )

       Pending before the Court are the Motions to Amend Judgment or in the alternative Motion for New Trial or Remittitur filed by Defendant Union Pacific Railroad Company ("Defendant"). (ECF Nos. 135, 137).  Plaintiff Greg Gibbons ("Plaintiff") filed a Response, (ECF No. 144), and Defendant filed a Reply, (ECF No. 146).  For the reasons stated herein, Defendant's Motions are **DENIED**.

## I.     DISCUSSION

       This action arises out of a personal injury incident that occurred on December 9, 2012, while Plaintiff was employed as a truck driver for Defendant.  At the time of the incident, Plaintiff was hauling equipment and supplies through a canyon near Caliente, Nevada.  In order to reach his destination, Plaintiff had to traverse a railroad flatcar bridge owned and maintained by Defendant.  The flatcar bridge spanned roughly one-hundred feet and was suspended roughly twelve feet above the canyon floor.  As Plaintiff crossed the canyon, the bridge collapsed into the underlying riverbed, causing injuries to Plaintiff's neck and back.

       Based on these injuries, Plaintiff initiated this action against Defendant on November 25, 2015, asserting a claim for negligence under the Federal Employers' Liability Act ("FELA").  Beginning on April 23, 2018, the Court conducted a nine-day jury trial to determine

liability and damages. On May 7, 2018, the jury reached a unanimous verdict and awarded Plaintiff: (1) $1,500,000.00 in lost wages and benefits; (2) $500,000.00 in likely future medical and hospital expenses; (3) $1,500,000.00 for mental and emotional humiliation or pain and anguish; and (4) $1,500,000.00 in physical pain and suffering. Defendant now moves for an amended verdict or new trial pursuant the Federal Rules of Civil Procedure 59(a) and 59(e).

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 59(a)(1) provides that "[t]he court may, on motion, grant a new trial on all or some of the issues-and to any party-as follows: (A) after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court [.]" While Rule 59 does not specify the grounds on which a motion for a new trial may be granted, "[h]istorically recognized grounds include, but are not limited to, claims 'that the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the party moving.'" *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007) (quoting *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251 (1940)). A new trial should not be granted unless, after giving full respect to the jury's findings, the Court "is left with the definite and firm conviction that a mistake has been committed." *Landes Const. Co. v. Royal Bank of Canada*, 833 F.2d 1365, 1371-72 (9th Cir. 1987). "The grant of a new trial is 'confided almost entirely to the exercise of discretion on the part of the trial court.'" *Murphy v. City of Long Beach*, 914 F.2d 183, 186 (9th Cir. 1990) (quoting *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33 (1980)).

In FELA cases, the district court's discretion is even further circumscribed. *See Tappero v. S. Pac. Transp. Co.*, 859 F.2d 154 (9th Cir. 1988). Here, the verdict must be honored "unless there is a complete absence of probative facts to support the jury's conclusion" because in these cases "the jury's power to engage in inferences is significantly broader than in common law negligence actions." *Pierce v. Southern Pac. Transp. Co.*, 823 F.2d 1366, 1370 (9th Cir. 1987).

Only "slight" or "minimal" evidence is required to raise a jury question of negligence in a FELA case. *Mendoza v. Southern Pac. Transp. Co.,* 733 F.2d 631, 632 (9th Cir. 1984). " '[I]t is only necessary that the jury's conclusion be one which is not outside the possibility of reason on the facts and circumstances shown.' " *Id.* at 633 (*quoting Chicago, Rock Island & Pac. R. Co. v. Melcher,* 333 F.2d 996, 999 (8th Cir. 1964)).

Under Rule 59(e), a district court may alter or amend a judgment: (1) to correct manifest errors of law or fact upon which the judgment rests; (2) to present newly discovered or previously unavailable evidence; (3) to prevent manifest injustice; and (4) if the amendment is justified by an intervening change in controlling law. *Allstate Ins. Co. v. Herron,* 634 F.3d 1101, 1111 (9th Cir. 2011). Although a district court "enjoys considerable discretion" in considering such a motion, "amending a judgment after its entry remains an extraordinary remedy which should be used sparingly." *Id.* (internal quotation marks omitted).

## III.  DISCUSSION

Defendant advances three arguments in favor of granting a new trial or amending the verdict: (1) Plaintiff failed to prove a necessary element of the negligence claim as a matter of law; (2) the Court's "evidentiary rulings and reversals in position" during trial impacted the verdict; and (3) the verdict is legally excessive. (Mot. for New Trial, ECF No. 135).  The Court addresses each argument in turn.

### A.  Failure to Prove a Necessary Element of the Claim

Defendant asserts that it is entitled to judgment as a matter of law because Plaintiff "offered no evidence of notice to [Defendant] of an alleged defect in the bridge prior to the incident." (*Id.* 10:2–3).[1]  To establish a claim for negligence under FELA, a Plaintiff must

---

[1]  The Court notes that Defendant's request for judgment as a matter of law is improperly raised in a Rule 59 motion and instead should have been raised in a timely motion under Rule 50(a) and (b). *See Crowley v. Epicept Corp.*, 883 F.3d 739, 751 (9th Cir. 2018) (discussing the interplay between Rule 50 and Rule 59).  The Court therefore considers Defendant's evidentiary challenges in the context of a request for new trial under Rule 59.

demonstrate that the employer had knowledge of a potentially dangerous condition and failed to reasonably investigate or correct the problem. *See Gallose v. Long Island R. Co.*, 878 F.2d 80, 85 (2d Cir. 1989) (citing *Mohn v. Marla Marie, Inc.*, 625 F.2d 900, 902 (9th Cir. 1980)). As noted in Jury Instruction No. 28, "if an employer learns or *should learn* of a potential hazard, it must take reasonable steps to investigate and to inform and protect its employees, or it will be liable when injury occurs." *See Gallose*, 878 F.2d at 85 (emphasis added).

Here, the record contains evidence from Plaintiff's expert Mark Burns as to the limited load-bearing capacity and structural integrity of the flatcar bridge. This evidence is further supported by photographs that show visible sagging in the center of the bridge prior to its collapse. Defendant's own witness, Randy Winn, testified as to the limited nature of Defendant's bridge inspections. Based on the record, the Court finds that a reasonable juror could conclude that Defendant learned or should have learned of a potential hazard with the flatcar bridge. *See Baker v. Texas & Pacific Railway Co.,* 359 U.S. 227, 228 (1959) (stating that a court may only take a factual determination from the jury when reasonable jurors could only reach a single conclusion on the issue). The Court therefore rejects Defendant's request for new trial based on failure to prove a necessary element of Plaintiff's claim.

## B. Evidentiary Rulings

Defendant argues that the Court erroneously "walked back" its pre-trial rulings on future medical expenses and lost work capacity, and this reversal contributed to an excessive verdict. (Mot. for New Trial 11:16–17). Specifically, Defendant cites Magistrate Judge Hoffman's pre-trial order on Plaintiff's request to late disclose an expert economist. (*See* Pre-trial Order, ECF No. 67). Defendant also cites the Court's ruling on its Motion in Limine regarding Dr. Dunn's testimony. (*See* MIL, ECF No. 102). According to Defendant, these rulings precluded Plaintiff from arguing for future medical expenses and future lost work capacity. (*See* Mot. for New Trial 7:14–19, 11:18–21).

To obtain a new trial based on erroneous evidentiary rulings, the moving party must show that the rulings were both erroneous and substantially prejudicial. *See Ruvalcaba v. City of Los Angeles*, 64 F.3d 1323, 1328 (9th Cir. 1995). The burden of persuasion is on the moving party and is very high. *Id.*; *Pac. Coast Steel v. Hunt*, No. 2:09–CV–02190–KJD, 2014 WL 3592098, at *3 (D. Nev. July 18, 2014).

Defendant's arguments are premised on an incorrect understanding of the Court's prior orders. Contrary to Defendant's position, the Court did not order before trial that Dr. Dunn was precluded altogether from testifying as to future medical expenses and lost work capacity. Rather, the Court's pre-trial ruling was expressly limited to Plaintiff's untimely request to add "Dr. Clauretie" as an economic expert. In the Order, Magistrate Judge Hoffman denied the late designation, stating it would be "prejudicial to Defendant because [Defendant] has not had the opportunity to defend against the future economic damages claim *contained in the report . . ..*" (Pre-Trial Order 4:7–10) (emphasis added). Absent from Judge Hoffman's ruling was any mention of prohibiting future damages in general. In fact, the Order explicitly references Dr. Dunn's report as putting future economic injury at issue. (*Id.* 3:20–22).

Similarly, the Court's ruling on Defendant's Motion in Limine did not preclude Plaintiff from arguing future damages. The Court's ruling was limited to Dr. Dunn's specific opinion that Plaintiff would lose 5–10 years of work life. As clarified throughout trial, the Court precluded this opinion because Dr. Dunn lacked a scientific basis to support that *particular* range. The Court did not preclude Dr. Dunn from testifying as to loss of work life in general. Furthermore, even had the Court departed from its initial ruling, limine rulings are provisional and therefore non-binding on the trial judge. *See Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000). Beyond conclusory assertions, Defendant does not provide any other argument showing that the Court's evidentiary rulings were erroneous or prejudicial. *See Ruvalcaba*, 64

F.3d at 1328. The Court therefore rejects Defendant's contention that erroneous rulings contributed to an excessive verdict.

### C. Evidence Supporting the Verdict

Defendant argues that the jury verdict should be set aside as legally excessive. (*See* Mot. for New Trial 10:9–13:19). To determine whether a damages award is excessive, a district court views the evidence concerning damages in a light most favorable to the prevailing party. *Fenner v. Dependable Trucking Co., Inc.,* 716 F.2d 598, 603 (9th Cir. 1983). Typically, unless the amount of damages is "grossly excessive or monstrous," a court will not disturb an award. *Zhang v. Am. Gem Seafoods, Inc.,* 339 F.3d 1020, 1040 (9th Cir. 2003). In FELA cases, the Supreme Court has repeatedly emphasized that reviewing courts are not permitted to set aside jury verdicts "merely because the jury could have drawn different inferences or conclusions or because [the courts] feel that other results are more reasonable." *See Tennant v. Peoria & Pekin Union Ry. Co.*, 321 U.S. 29, 35 (1944); *Lavender v. Kurn*, 327 U.S. 645, 653 (1946). If a court determines that a damages award is grossly excessive, it has two alternatives: "[i]t may grant the defendant's motion for a new trial or deny the motion conditional upon the prevailing party accepting a remittitur." *Fenner,* 716 F.2d at 603. Generally, the proper amount of a remittitur is the maximum amount sustainable by the evidence. *See Los Angeles Memorial Coliseum Commission v. National Football League,* 791 F.2d 1356, 1366 (9th Cir. 1986).

In its Motion, Defendant asserts that the verdict's excessiveness "can be found in the fact that the jury awarded more to [Plaintiff] than even [Plaintiff] or his counsel believed he was entitled to . . . ." (Mot. for New Trial 11:3–5). In particular, Defendant notes that the jury awarded "over twice the amount Gibbons requested at trial, and over 7.5 times the highest demand made by Gibbons pretrial." (*Id.* 10:9–11). In Response, Plaintiff challenges Defendant's characterization of his damage calculations during trial. (Pl.'s Resp. 9:15–12:7, ECF No. 144). According to Plaintiff, "Plaintiff's counsel actually suggested a figure in excess

of $3,940,461.00, when he showed how Plaintiff's damages could be calculated using a completed Verdict form as an example." (*Id.* 9:18–19).

Although Defendant cites three cases to support its argument, none of these cases stand for the proposition that a verdict is excessive by virtue of a plaintiff's requested damages being lower than the award. *See Kern v. Levolor Lorentzen Inc.*, 899 F.2d 772, 775 (9th Cir. 1990); *Houck & Sons Inc. v. Transylvania County*, 852 F.Supp. 442, 459-60 (W.D.N.C. 1993); *Filkins v. McAllister Brothers, Inc.*, 695 F.Supp. 845, 851 (E.D. Va. 1988). Rather, the focus in these cases—and the case at bar—is on whether the damages *proved* support the verdict. While the discrepancy between amount requested and the verdict can serve as evidence that the jury was influenced by prejudice or passion, Defendant does not raise this argument in its Motion nor does the Court find it meritorious. *See Seymour v. Summa Vista Cinema, Inc.,* 809 F.2d 1385, 1387 (9th Cir.1987). Moreover, as Plaintiff suggested damages "in excess" of the amount laid out in closing arguments, the Court does not find Plaintiff's requested damages inconsistent with the jury's ultimate verdict. The Court therefore rejects Defendant's argument on this issue.

Defendant also challenges the damage award based on the allegedly speculative nature of the jury's verdict. (*See* Mot. for New Trial 11:18–13:19). Defendant raises this argument particularly in the context of the jury's lost wages and benefits award. To recover for lost wages under FELA, however, a plaintiff need not "prove that in the near future he will earn less money than he would have but for his injury." *Gorniak v. Nat'l R.R. Passenger Corp.*, 889 F.2d 481, 484 (3d Cir. 1989). Rather, the plaintiff in a FELA case may recover compensatory damages based more generally on a diminution in his ability to earn a living or the narrowing of economic opportunities. *Id.* The necessarily speculative nature of this inquiry is not grounds for removing lost earnings from a jury. *See Colyer v. Consol. Rail Corp.*, 114 F. App'x 473, 482 (3d Cir. 2004) (recognizing the preference for leaving the resolution of uncertainty about a

plaintiff's future earnings to a properly instructed jury). Similarly, the speculative nature of mental and physical suffering does not provide grounds to alter the verdict. *See S. Pac. Co. v. Guthrie*, 180 F.2d 295, 303 (9th Cir. 1949); *Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140 (2d Cir. 2014). As FELA cases often involve evaluating intangible factors, it follows that courts frequently uphold large verdicts in such cases. *See DeBiasio v. Illinois Cent. R.R.*, 52 F.3d 678, 688–89 (7th Cir. 1995) (compiling large awards in other FELA cases); *Ahlf v. CSX Transp., Inc.*, 386 F. Supp. 2d 83, 90 (N.D. N.Y. 2005) (finding that a $1,750,000 pain and suffering award for a serious back injury and major surgery falls within the "reasonable range of verdicts").

Although the award in this case is substantial, the Court finds that the verdict is not "grossly excessive" or else contrary to the clear weight of evidence. In reaching this conclusion, the Court notes Dr. Dunn's testimony that the herniations in Plaintiff's thoracic, cervical, and lumbar spine were caused by the bridge collapse. The Court further notes that Plaintiff underwent a cervical fusion following the incident, and Dr. Dunn testified as to his opinion that Plaintiff would require additional back and neck surgeries in the future. In addition, the Court notes Dr. Dunn's testimony that Plaintiff would suffer various functional limitations relevant to his job responsibilities, including those affecting Plaintiff's ability to lift, twist, bend, and tolerate bouncing up and down. Aside from this testimony, the Court also notes that the record includes evidence regarding Plaintiff's age, salary, job functions, personal impairments, lifestyle, and pain management.

In reaching the verdict, the jurors were permitted to apply their everyday common sense and judgment to draw reasonable inferences from the evidence. (*See* Jury Instruction No. 12, ECF No. 130). Indeed, evaluating intangibles like loss of work life, physical pain and suffering, and mental anguish are precisely the type of fact issues best left for a properly instructed jury. *Holzhauer v. Golden Gate Bridge Highway & Transportation Dist.*, 743 F.

App'x 843, 845 (9th Cir. 2018); *See also Manfred v. Superstation, Inc.*, 365 F. App'x 856, 858 (9th Cir. 2010) (stating that the Court's role on review is not to second guess how the jury weighed specific testimony). The parties agreed to both the jury instructions and verdict form in this case, and there is no indication the jury failed to perform a reasoned analysis based on these instructions. The mere fact that FELA cases, by their very nature, often require greater inferences on the part of the factfinder than typical negligence cases does not serve to undermine the jury's determinations. *See Pierce*, 823 F.2d at 1370. Accordingly, and based on a review of the record, the Court finds that the jury verdict is not excessive.[2]

## IV. **CONCLUSION**

**IT IS HEREBY ORDERED** that Defendant's Motions to Amend Judgment or in the alternative Motion for New Trial or Remittitur, (ECF Nos. 135, 137), are **DENIED**.

**DATED** this ___25___ day of March, 2019.

_____
Gloria M. Navarro, Chief Judge
United States District Court

---

[2] As the Court finds that the jury verdict is not excessive, the Court declines to order a remittitur.